IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BERNICE B. BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-194 (LMB/IDD) |
| THE BANK OF NEW YORK MELLON, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Before the Court is the defendants' The Bank of New York Mellon ("Bank of New York") and New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") (collectively, "defendants") Motion to Dismiss, which argues that pro se plaintiff Bernice B. Brown's ("Brown" or "plaintiff") Complaint fails to state a claim upon which relief may be granted. Defs.' Mot. to Dismiss Compl. [Dkt. No. 18], Apr. 8, 2016. The motion was accompanied by a proper Roseboro Notice, which informed plaintiff that she was entitled to file a response to the motion within 21 days and that the Court could dismiss her lawsuit if she failed to respond. Roseboro Notice to Pro Se Pl. [Dkt. No. 18-3], Apr. 8. 2016. Plaintiff has failed to file any response, which is now 10 days overdue.

Because plaintiff previously filed a response to defendant Bank of America, N.A.'s motion to dismiss, she is aware of the Court's rules regarding filings and understands how to file an opposition brief. Plaintiff was also present for the hearing related to this civil action on April 29, 2016, when Bank of America, N.A.'s motion to dismiss was granted, plaintiff's emergency motion

seeking injunctive relief was denied, and Count I of plaintiff's Complaint was dismissed.[1] Order [Dkt. No. 32], Apr. 29, 2016. Accordingly, plaintiff's failure to file a response to Bank of New York and Shellpoint's motion is deemed by the Court to be an abandonment of her lawsuit. And finding that oral argument would not further the decisional process, defendant's motion to dismiss will be resolved on the pleadings before the court.

Even if plaintiff had not failed to oppose the Motion to Dismiss, the remaining counts in her Complaint fail for the reasons raised by Bank of New York and Shellpoint in their Motion to Dismiss. Plaintiff's lawsuit arises out of the foreclosure sale of her property at 7753 Sullivan Circle, Alexandria, VA 22315 and her pending eviction from that property.[2] On April 29, 2016, her claim for injunctive relief barring that eviction was dismissed, leaving seven remaining counts in her Complaint. Specifically, the Complaint alleges in Counts II-V that defendants violated 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.40, 12 C.F.R. § 1024.41, 12 C.F.R. § 1024.35(b)(7), and 12 C.F.R. § 1024.39, and Counts VI-VIII allege that defendants misappropriated and converted funds, violated other federal consumer laws, and intentionally inflicted emotional distress on plaintiff. Compl. [Dkt. No. 1] 2, Feb. 25, 2016.

---

[1] Plaintiff refers to her eight claims as "causes of action;" however, the Court will refer to them as "counts," as it did in its earlier Order dismissing Count I.

[2] It is unclear whether plaintiff is in fact currently residing at the property. The Complaint alleges that defendants seek to "remove the Plaintiff from their [sic] home," Compl. ¶ 37; however, plaintiff's opposition to Bank of America's motion to dismiss states that the property was initially used as a rental property and then "became Plaintiff's primary residence" in 2012. Mem. of Law in Supp. of Pl.'s Opp'n Mot. to Deny Def. Bank of America N.A.'s Mot. to Dismiss Pl.'s Compl. [Dkt. No. 17] ¶ 6, Apr. 8, 2016. Furthermore, plaintiff has worked as a licensed mortgage broker, meaning she should have a greater understanding of foreclosure and eviction laws than the average homebuyer, and casting into doubt the legitimacy of her contention that the property is her primary residence. See generally, id., Ex. P, 2009 Annual Report of Mortgage Brokers from Bernice B. Brown dba The Gemris Group [Dkt. No. 17-16], Apr. 8, 2016; id., Ex. Q, Mortgage Report of Examination of The Gemris Group, LLC [Dkt. No. 17-17], Apr. 8, 2016. Additionally, plaintiff's listed address is a P.O. box in Great Falls, rather than the Alexandria property at issue in this action.

Defendants contend that each of these causes of action fails to state a claim upon which relief may be granted. Although plaintiff is proceeding pro se, she must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

With respect to plaintiff's Regulation X claims in Counts II-V, defendants correctly argue that 12 C.F.R. §§ 1024.35, 1024.39, and 1024.40 do not explicitly provide a cause of action to private individuals. See Mem. of Law in Supp. of Defs.' Mot. to Dismiss Compl. [Dkt. No. 18-1] 7, Apr. 8, 2016 ("Defs.' Br."); Gresham v. Wells Fargo Bank, N.A., No. 15-40748, 2016 WL 1127717, at *3 (5th Cir. Mar. 21, 2016) ("Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers."); Schmidt v. Pennymac Loan Services, LLC, 106 F. Supp. 3d 859, 867 (E.D. Mich. 2015) ("[N]o private cause of action is available to enforce 12 C.F.R. § 1024.40."); Miller v. HSBC Bank U.S.A., N.A., No. 13 Civ. 7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) ("[Plaintiff's] 'claim' based upon 12 C.F.R. § 1024.35 . . . fails because that regulation does not provide a private right of action for damages.").

In contrast, 12 C.F.R. § 1024.41 does allow a borrower to "enforce the provisions of this section pursuant to section 6(f) of" the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f).[3] Although the Complaint cites the portion of § 12 C.F.R. § 1024.41 defining a complete loss mitigation application as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications

---

[3] 12 U.S.C. § 2605(f) allows for recovery of "actual damages to the borrower as a result of the failure" to comply with 12 C.F.R. § 1024.41 and also provides for additional damages of no more than $2,000 if there is "a pattern or practice of noncompliance."

3

for the loss mitigation options available to the borrower" and requiring a servicer to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application," it does not clearly identify how she believes defendants violated this provision. Compl. ¶ 65; see also 12 C.F.R. § 1024.41(b)(1). Another portion of 12 C.F.R. § 1024.41 not quoted by plaintiff in her Complaint prohibits a servicer from foreclosing on a property after receiving a "complete loss mitigation application" unless the servicer has notified the borrower "that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied." 12 C.F.R. § 1024.41.[4]

The Complaint's most specific allegation regarding this provision is that defendants violated the regulation "by moving forward on a foreclosure sale of Plaintiff's . . . Property which restricted dual tracking." Compl. ¶ 66. Based on other allegations in the Complaint, it appears that plaintiff's primary claim is that defendants continued with the foreclosure despite plaintiff having filed a loan modification application that she began in December of 2014, when she "downloaded [an] application from [Shellpoint's] website and faxed a complete package based on their website checklist." Compl. ¶ 69. Plaintiff further alleges that she received a "written denial letter" from Shellpoint but then faxed another "completed loan modification package" on December 29, 2015,

---

[4] Other sections of the regulation provide that a servicer must review and respond to a complete loss mitigation application within certain periods of time For example, the regulation gives a servicer five days to notify the borrower if the application is complete and 30 days to provide notice to the borrower of what loss mitigation options, if any, are available. 12 C.F.R. §1024.41(b)(2)(i)(B); 12 C.F.R. §1024.41(c)(1). Plaintiff does not appear to raise a claim that defendants were not timely in their responses; moreover, her allegations are sometimes contradictory and are insufficient to establish exactly when the majority of her communications with defendants occurred.

4

as "a continuation of the loss mitigation process." Id. ¶ 64. In light of these allegations, plaintiff complains that defendants improperly foreclosed on her property instead of fully evaluating and/or accepting her loan modification application(s). The Complaint also appears to allege that Shellpoint violated the portion of § 1024.41 that requires that a servicer exercise "reasonable diligence in obtaining documents" by referencing Shellpoint's alleged lack of written communication during the loan modification process. Id. ¶¶ 65, 69.

Plaintiff undermines her assertion that Shellpoint never responded to her in writing by acknowledging that Shellpoint provided her at least one "written denial letter." See Pl.'s Mot. for Emergency Temporary & Permanent Inj. Relief from Eviction, Ex. BB, Letter from Loran Kaufmann, Escalations Department, Shellpoint Mortgage Servicing, to Bernice Brown (Nov. 11, 2015) [Dkt. No. 21-29], Apr. 22, 2016. This same letter demonstrates that defendants proceeded with the foreclosure sale only after denying plaintiff's appeal of the denial of her loss mitigation application, which denial occurred after a "thorough[] review[] [of] the income information provided in [plaintiff's] appeal." Id. at 1.

Specifically, among the 30 exhibits attached to Plaintiff's Motion for Emergency Temporary and Permanent Injunctive Relief from Eviction is a letter dated November 11, 2015, sent by a Shellpoint representative to plaintiff, stating that "Shellpoint acknowledges [plaintiff's] appeal of its determination on [her] eligibility for loss mitigation options" and after having "re-visited its initial assessment," maintained its initial determination that she was not eligible for a loan modification. Id. This letter demonstrates that Shellpoint reviewed plaintiff's loss mitigation application and denied it, that plaintiff then appealed and provided additional income information, and that Shellpoint denied that appeal after further review. That conduct is all that is required under § 1024.41 and specifically subsection (g); therefore, defendants were entitled to proceed with the

5

foreclosure sale of plaintiff's property. Accordingly, plaintiff's allegations are insufficient to establish a plausible claim that the defendants failed to comply with the various requirements of § 1024.41, and plaintiff's own exhibit demonstrates that defendants properly proceeded with the foreclosure sale after plaintiff's loss mitigation application and appeal were denied.

Plaintiff's claim for misappropriation and conversion of funds also fails with respect to these defendants because her complaint lacks any allegations regarding misappropriated funds that are conceivably related to Bank of New York or Shellpoint. Instead, plaintiff alleges that defendant Bank of America, N.A., which is no longer a party to this litigation, performed an improper "Reinstatement Calculation." Compl. ¶ 78. The Complaint's other allegations are too vague to state a claim upon which relief can be granted, as they simply allege that defendants "misappropriated and converted funds for their 'alleged expenses'" and did so "maliciously and oppressively." Id. ¶¶ 79-80. Because these allegations are entirely conclusory and devoid of the necessary factual specificity, plaintiff's claim for misappropriation and conversion of funds cannot survive defendants' Motion to Dismiss. Additionally, to the extent plaintiff's conversion claim is premised on defendants' exercise of dominion over the foreclosed-upon property, as discussed above she fails to allege facts demonstrating that such foreclosure was wrongful.

Similarly, plaintiff's claim for "violation of other federal consumer laws" fails due to a lack of specific factual allegations. Plaintiff alleges that defendants are debt collectors as defined by the Federal Trade Commission ("FTC") and that they violated the Fair Debt Collection Practices Act ("FDCPA") as well as the FTC. Id. ¶¶ 82-84. As defendants correctly argue, Defs.' Br. 11, the FTC is a federal administrative body and not a statute that can be violated or that provides a cause of action. Furthermore, defendants correctly argue, id. at 10-11, that plaintiff fails to allege facts establishing that she was subject to collection activity arising from a consumer debt or that

6

defendants are debt collectors within the meaning of the FDCPA. See Goodrow v. Friedman & MacFadyen, P.A., No. 3:11cv20, 2013 WL 3894842, at *6 (E.D. Va. July 26, 2013).[5] As Bank of America stated in its motion to dismiss memorandum, a pleading to which plaintiff did reply, courts in this district have determined that mortgage lenders and servicing companies are not "debt collectors" under the FDCPA. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss Compl. [Dkt. No. 7] 11, Mar. 18, 2016; see also Schmidt v. Wells Fargo Home Mortg., 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011) ("[C]ourts in this district have consistently held, without reversal, that mortgage servicers are not debt collectors under the FDCPA."); Scott v. Wells Fargo Home Mortg., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) ("[T]he law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." (emphasis in original)). Accordingly, plaintiff's claim for "violations of other federal consumer laws" is both factually unsupported and legally faulty.

Finally, plaintiff's intentional infliction of emotional distress claim also fails to state a claim upon which relief may be granted. A complaint for intentional infliction of emotional distress must allege facts establishing that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and the distress is severe." Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). "[L]iability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Id. at 163.

---

[5] "To prevail on an FDCPA claim, a plaintiff must allege that: (1) he or she was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt." Goodrow, 2013 WL 3894842, at *6.

7

Plaintiff does not allege any facts demonstrating that she suffered from emotional distress, much less severe distress that no reasonable person could be expected to endure. Instead, the Complaint alleges that plaintiff "has suffered severe emotional distress in the amount of $98,224,578.00," Compl. ¶ 92, but it does not allege any facts supporting that conclusory statement or indicating that plaintiff's emotional or physical well-being have been impacted above and beyond whatever financial harms she may have suffered. In the absence of such allegations, plaintiff's claim fails. Accordingly, plaintiff's Complaint fails in its entirety to state a claim upon which relief may be granted, and would be dismissed even if plaintiff had continued to pursue her lawsuit.

For the reasons stated above defendant's Motion to Dismiss will be granted and the Complaint will be dismissed with prejudice by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 9 day of May, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge